UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR-PEDIC INTERNATIONAL INC., MARK A. SARVARY, and DALE E. WILLIAMS,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Norfolk County Retirement System ("Norfolk County" or "Plaintiff") makes the following allegations based upon the investigation of Plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Tempur-Pedic International Inc. ("Tempur-Pedic" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities fraud class action brought on behalf of purchasers who, between January 25, 2012 and June 5, 2012, inclusive (the "Class Period"), acquired the publicly-traded common stock of Tempur-Pedic (the "Class") seeking to pursue remedies under

- 2 -

the Securities Exchange Act of 1934 (the "Exchange Act") against Tempur-Pedic and certain of its officers.

2. This action alleges that Defendants made false and misleading statements and concealed material information relating to the Company's deteriorating competitive position and projected net sales, earnings per diluted share ("EPS"), and related financial performance for the Company's full year of operations in 2012. As a result of Defendants' false and misleading statements and omissions, Tempur-Pedic's common stock traded at artificially-inflated prices during the Class Period.

3. On January 24, 2012, Tempur-Pedic issued a press release setting forth its financial performance for 2011, as well as describing its competitive position and offering guidance related to net sales and EPS for the full-year period of 2012.

4. Rather than disclosing that the Company's competitive position was rapidly deteriorating due to the influx into the market of aggressively priced alternative brands, Defendants hid that fact by asserting that Tempur-Pedic's competitive position had strengthened. In the face of evidence that its financial outlook was declining, the Company also claimed that it foresaw material growth in net sales and EPS during the course of 2012, a projection that Tempur-Pedic confirmed to the market on April 19, 2012. Investors, who had been led to expect an upward revision to guidance, were disappointed by the April 19 announcement, and Tempur-Pedic's share price fell more than 20 percent on April 20, 2012, on extraordinarily heavy trading volume.

5. Less than four weeks later, on May 7, 2012, the Company confirmed an analyst report that it would be implementing a significant strategic shift: offering a substantial price

- 3 -

discount on one of its best-selling products. On this news, the Company's share price fell 14.85 percent.

6. Ultimately, on June 6, 2012, Tempur-Pedic admitted that the outlook for 2012 net sales and EPS that the Company had provided and confirmed over the prior six months was not simply overly optimistic, but was directionally inaccurate. Rather than projected *growth* in net sales and EPS of 12.67 percent and 19.49 percent, respectively, Tempur-Pedic revealed that it anticipated that net sales would be essentially flat and that EPS would suffer a 15.09 percent *decline*. Tempur-Pedic's stock price fell 48.73 percent on the heaviest volume in the Company's publicly-traded history.

7. The following true facts were known by the Defendants but concealed from Tempur-Pedic's shareholders during the Class Period: (1) Tempur-Pedic's competitive position had weakened, and was continuing to weaken; (2) Tempur-Pedic was already experiencing negative effects from competition, forcing the Company to accept lower margins, and materially reducing net sales and EPS; (3) Tempur-Pedic's outlook for 2012 net sales and EPS was not simply weaker than the optimistic estimates given to investors, but was in fact, negative; and (4) as a result, Defendants lacked a reasonable basis for the statements made concerning the Company's condition, competitive position, and outlook.

8. Defendants' false and misleading statements caused Tempur-Pedic stock to trade as high as $87.43 per share and close as high as $87.26 per share on April 18, 2012.

9. Before the markets opened on June 6, 2012, the truth of the Company's weak competitive position and poor outlook for 2012 was revealed. During the trading session that followed, the Company's stock price fell by $21.28 per share, or 48.73 percent, to close at $22.39 per share on extraordinarily high trading volume.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

11. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 28 U.S.C. § 1331 [15 U.S.C. § 78a(a)].

12. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 28 U.S.C. § 1391(b), because many of the events and omissions complained of herein occurred in substantial part in the Central Division of the Eastern District of Kentucky.

13. Defendant Tempur-Pedic is a resident of Fayette County, Kentucky, with its principal office located at 1713 Jaggie Fox Way, Lexington, Kentucky 40511.

14. Defendant Mark A. Sarvary is a resident of Fayette County, Kentucky, with his mailing address listed as 1713 Jaggie Fox Way, Lexington, Kentucky 40511.

15. Defendant Dale E. Williams is a resident of Fayette County, Kentucky, with his mailing address listed as 1713 Jaggie Fox Way, Lexington, Kentucky 40511.

16. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17. Plaintiff Norfolk County purchased the publicly-traded common stock of Tempur-Pedic at artificially inflated prices during the Class Period, as set forth in the accompanying Certification and incorporated by reference herein, and has been damaged thereby. Plaintiff resides in Norfolk County, Massachusetts.

- 5 -

18. Defendant Tempur-Pedic is a Delaware corporation with headquarters in Lexington, Kentucky. The Company's stock is listed on the New York Stock Exchange (the "NYSE") under the ticker symbol "TPX."

19. Defendant Mark A. Sarvary ("Savary") is the President and Chief Executive Officer ("CEO") of Tempur-Pedic and a member of the Company's board of directors.

20. Defendant Dale E. Williams ("Williams") is the Executive Vice President and Chief Financial Officer ("CFO") of Tempur-Pedic.

21. The Defendants named in paragraphs 19 and 20 are referred to as the "Individual Defendants."

22. During the Class Period, the Individual Defendants, as senior executive officers of Tempur-Pedic, were privy to confidential and proprietary information concerning Tempur-Pedic, its operations, finances, financial condition, and present and future business prospects. The Individual Defendants also had access to material-adverse, non-public information concerning Tempur-Pedic, as discussed in detail below. Because of their positions with Tempur-Pedic, the Individual Defendants had access to non-public information about the Company's business, finances, and future business prospects through access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and through reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew, or recklessly disregarded, that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

23. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior

executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act, and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to, and did, directly or indirectly, control the conduct of Tempur-Pedic's business.

24. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of Tempur-Pedic's reports, press releases, and presentations to securities analysts and, through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

25. As senior executive officers and as controlling persons of a publicly-traded company whose common stock is registered with the SEC, traded on the NYSE, and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Tempur-Pedic's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue so that the market price of Tempur-Pedic's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

## FRAUDULENT CONDUCT AND COURSE OF BUSINESS

26. Defendants are liable for: (1) making false statements; or (2) failing to disclose adverse facts known to them about Tempur-Pedic. Defendants' deception was a success, as it: (1) misled the investing public regarding Tempur-Pedic's prospects and business; (2) artificially inflated the prices of Tempur-Pedic common stock; and (3) caused Plaintiff and other members of the Class to purchase Tempur-Pedic's common stock at inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

27. Tempur-Pedic manufactures and distributes "premium" mattresses, pillows and related products that incorporate visco-elastic polyurethane foam, a pressure-relieving material. The Company's products are sold in more than 80 countries under the TEMPUR® and Tempur-Pedic® brand names. Although the underlying principles of production for visco-elastic foam are part of the public domain, Tempur-Pedic claims to employ a proprietary formula and method that the Company protects through trade secrets.

28. Tempur-Pedic claims that its proprietary material distinguishes its products from others in the marketplace due to the material's high quality, high density, and temperature sensitivity. The Company periodically offers guidance to investors on net sales figures, a metric related to the relative performance of Tempur-Pedic's products in the market.

29. Tempur-Pedic describes the strength of its financial performance as linked to the Company's operating and net income margins, which it describes as providing significant cash flow. The Company periodically offers guidance to investors on EPS, a metric related to Tempur-Pedic's operating and net income margin.

30. As a consequence of Tempur-Pedic's purported strategy of relying on proprietary methods and materials to command greater margins than the Company's competitors, Tempur-Pedic seeks to control the pricing of its products through vertical integration and control of retail operations. During the period leading up to the Class Period, Tempur-Pedic generally did not seek to improve net sales or other elements of Company performance through offering discounted pricing on products in continuing production.

### Defendants' False and Misleading Statements Issued During The Class Period

31. After the markets closed on January 24, 2012, Tempur-Pedic issued a press release announcing its financial results for the fourth quarter and full-year ended December 31, 2011. Tempur-Pedic reported net income of $56.3 million for the fourth quarter and $219.6 million for the full year of 2011, as compared to net income of $46.3 million in the fourth quarter and $157.1 million for the full year of 2010. The Company also reported a net sales increase of 25 percent, to $366.8 million, in the fourth quarter of 2011, from $292.7 million in the fourth quarter of 2010, and an increase of 28 percent, to $1.42 billion during the full year of 2011, from $1.11 billion during the full year 2010. Tempur-Pedic further reported an increase in EPS of 27 percent, to $0.84 during the fourth quarter of 2011, from $0.66 in the fourth quarter of 2010, and an increase of 47 percent over the full year, to $3.18 during 2011, from $2.16 during 2010. In connection with the press release, CEO Sarvary stated in part:

> In 2011, we delivered strong financial performance, *strengthened our competitiveness* and implemented a range of strategic growth initiatives. Over the next year, we plan to increase our rate of investment in areas that will drive growth including a major new product launch, increased advertising, and expanded distribution. In addition, to ensure Tempur continues to deliver the best sleep, our R&D team is focused on executing a broad technology strategy that includes a focus on improving existing product performance and lowering costs as well as another major new product launch in 2013. (Emphasis added.)

32. The Company also announced guidance for the full-year period of 2012 for net sales in a range of $1.60 billion to $1.65 billion and for EPS in a range of $3.80 and $3.95 per diluted share.

33. On this positive news, Tempur-Pedic's stock jumped, increasing $5.56 per share, or 8.93 percent, to close at $67.81 per share on January 25, 2012.

34. After the markets closed on January 30, 2012, the Company filed its annual report on Form 10-K for the quarter and year ended December 31, 2011, which included the same financial results previously reported in the Company's January 24, 2012 press release. The Form 10-K also included a certification by CEO Sarvary, incorporated therein as Exhibit 31.1, which stated:

> I, Mark Sarvary, certify that:
>
> 1. I have reviewed this annual report on Form 10-K of Tempur-Pedic International Inc.;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting;

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

35. The Company's January 24, 2012 Form 10-K also included a substantially similar certification signed by CFO Williams as Exhibit 31.2.

### The Truth Begins to Emerge

36. After the markets closed on April 19, 2012, Tempur-Pedic reported its financial results for the first quarter ended March 31, 2012. The Company reported net income of $56.2 million for the first quarter of 2012, as compared to net income of $48.3 million in the first quarter of 2011, and a net sales increase of 18 percent to $384.4 million in the first quarter of 2012, from $325.8 million in the first quarter of 2011. Tempur-Pedic also reported EPS of $0.86 for the quarter. The release included the following comments of CEO Sarvary:

> In the first quarter we delivered solid financial performance, enhanced our product range with the introduction of TEMPUR-Simplicity and increased our investment in advertising by 37% to $47 million. We are excited about the rollout of our new dealer programs beginning in the second quarter.

37. In the same filing, the Company also *confirmed* net sales and EPS guidance for full year 2012.

38. Analysts reacted negatively to Tempur-Pedic's failure to raise guidance for full-year 2012 net sales and EPS, as the Company had raised full-year guidance in connection with its respective first-quarter earnings releases in 2011 and 2010.

39. In reaction to this news, Tempur-Pedic's stock dropped $17.22 per share, or 20.5 percent, to close at $66.53 per share on April 20, 2012, on extraordinary trading volume.

40. After the markets closed on April 26, 2012, the Company filed its quarterly report on Form 10-Q for the quarter ended March 31, 2012, which included the same financial results previously reported in the Company's April 19, 2012 press release. In connection with the Form 10-Q, CEO Sarvary and CFO Williams filed certifications containing language that

was substantially similar to the certification executed by CEO Sarvary in connection with the Company's Form 10-K filing on January 24, 2012.

41. On May 7, 2012, it was reported that an analyst from Raymond James & Associates, Inc. published a note revealing that Tempur-Pedic would be offering its "Cloud Supreme" mattress, one of the Company's most profitable and popular models, at a discount of between 12 and 17 percent between May 16 and July 8, 2012. *Mattress Cos. Fall as Raymond James Notes Discount*, Associated Press, May 7, 2012. The analyst stated that he could not recall an earlier instance when the Company offered a cash discount on a non-clearance model. Later that day, in response to investor inquiries, Tempur-Pedic issued a press release confirming plans for the discounted sales.

42. In reaction to this revelation, the Company's share price fell $8.42 per share, or 14.85 percent, to close at $48.29 per share on May 7, 2012.

## The Truth Is Revealed

43. Before the markets opened on June 6, 2012, Tempur-Pedic issued a press release that commented on its developing second quarter performance and disclosed substantially reduced financial guidance for net sales and EPS for the full year of 2012:

> The Company currently expects net sales for the second quarter ending June 30, 2012 to be 3-5% below last year's second quarter net sales, driven by the expectation that the Company's North American sales will decline approximately 8% year-over-year. With lower than planned sales and associated deleverag[ing], the Company currently expects second quarter 2012 diluted earnings per share to decrease approximately 50% from the second quarter of 2011.
>
> Based on the second quarter outlook and an updated full year review, the Company currently expects full year net sales to be approximately $1.43 billion. In addition, the Company is updating its full year earnings guidance and currently expects diluted earnings per share to be approximately $2.70.

The Company's revisions represented a reduction of more than 10 percent to net sales and nearly 29 percent to EPS from the levels that Tempur-Pedic had confirmed less than 7 weeks earlier.

44. CEO Sarvary sought to attribute the newly disclosed outlook to the effects of competition, noting:

> Sales trends in our North America business during the second quarter have been disappointing and below plan, primarily due to changes in the competitive environment, including an unprecedented number of new competitive product introductions which have been supported by aggressive marketing and promotion.

45. As a result of these revelations, Tempur-Pedic's stock price fell $21.28 per share, or 48.73 percent, to close at $22.39 per share on June 6, 2012, on volume more than 16 times the daily average during the Class Period.

46. The following true facts were known by the Defendants but concealed from Tempur-Pedic's shareholders during the Class Period: (1) Tempur-Pedic's competitive position had drastically weakened, and was continuing to weaken; (2) Tempur-Pedic was already experiencing negative effects from competition, forcing the Company to accept lower margins, and materially reducing net sales and EPS; (3) Tempur-Pedic's outlook for 2012 net sales and EPS was not simply weaker than the optimistic estimates given to investors, but was in fact, negative; and (4) as a result, Defendants lacked a reasonable basis for the statements made concerning the Company's condition, competitive position, and outlook.

47. Defendants' false statements and omissions caused Tempur-Pedic's common stock to trade at artificially inflated prices during the Class Period. However, after the revelations described above became known to the market on June 6, 2012, the Company's share

price fell $64.87—or 74.34 percent—from its Class Period-high closing price of $87.26 per share on April 18, 2012.

## SCIENTER

48. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made or acted with reckless disregard for the true information known to them at the time for the reasons discussed above. In so doing, Defendants committed acts, and practiced and participated in a course of business that operated as a fraud or deceit on purchasers of Tempur-Pedic common stock during the Class Period.

## LOSS CAUSATION/ECONOMIC LOSS

49. During the Class Period, as detailed herein, Defendants made false and misleading statements that artificially inflated the price of Tempur-Pedic common stock, and operated as fraud or deceit on Class Period purchasers of Tempur-Pedic common stock by misrepresenting the recent and ongoing decline in the Company's net sales, competitive position, and business prospects. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Tempur-Pedic common stock fell precipitously as the prior artificial inflation came out of the price. As a result of their purchases of Tempur-Pedic common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

50. Tempur-Pedic's verbal "Safe Harbor" warnings that accompanied its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

51. Defendants are also liable for any false FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false, and the FLS was authorized and/or approved by an executive officer of Tempur-Pedic who knew that the FLS was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

52. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

    (a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    (b) the omissions and misrepresentations were material;

    (c) the Company's stock traded in an efficient market;

    (d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    (e) Plaintiff and other members of the Class purchased Tempur-Pedic common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

53. At all relevant times, the markets for Tempur-Pedic stock were efficient for the following reasons, among others:

(a) as a regulated issuer, Tempur-Pedic filed periodic public reports with the SEC;

(b) Tempur-Pedic regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services; and

(c) Tempur-Pedic common stock was actively traded in an efficient market, namely the NYSE, under the symbol "TPX."

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of the Class. Excluded from the Class are Defendants, directors, and officers of Tempur-Pedic, and their families and affiliates.

55. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of April 25, 2012, Tempur-Pedic had more than 63.5 million shares of common stock outstanding, owned by thousands of investors.

56. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a) whether Defendants violated the Exchange Act;

    (b)  whether Defendants omitted and/or misrepresented material facts;

    (c)  whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d)  whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    (e)  whether the price of Tempur-Pedic common stock was artificially inflated; and

    (f)  the extent of damage sustained by Class members and the appropriate measure of damages.

  57.  Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

  58.  Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

  59.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### COUNT I

**For Violation of § 10(b) of the Exchange Act
and Rule 10b-5 Against All Defendants**

  60.  Plaintiff incorporates paragraphs 1 through 59 by reference.

  61.  During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that

they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a) employed devices, schemes, and artifices to defraud;

    (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c) engaged in acts, practices, and a course of business that operated as fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Tempur-Pedic common stock during the Class Period.

63. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially-inflated prices for Tempur-Pedic common stock. Plaintiff and the Class would not have purchased Tempur-Pedic common stock at the prices they paid, or at all, had they been aware that the market prices were artificially and falsely inflated by Defendants' misleading statements.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Tempur-Pedic common stock during the Class Period.

### COUNT II

**For Violation of § 20(a) of the Exchange Act
Against the Individual Defendants**

65. Plaintiff incorporates paragraphs 1 through 64 by reference.

66. The Individual Defendants acted as controlling persons of Tempur-Pedic within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions and their power to control public statements about Tempur-Pedic, the Individual Defendants had the power and ability to control the actions of Tempur-Pedic and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Rule 23;

B. Awarding Plaintiff and the members of the Class damages and interest;

C. Awarding Plaintiff's reasonable costs, including attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 20, 2012　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 s/John C. Roach
　　　　　　　　　　　　　　　　　　　　　　John C. Roach
　　　　　　　　　　　　　　　　　　　　　　W. Keith Ransdell
　　　　　　　　　　　　　　　　　　　　　　S. Chad Meredith
　　　　　　　　　　　　　　　　　　　　　　**RANSDELL & ROACH PLLC**
　　　　　　　　　　　　　　　　　　　　　　176 Pasadena Drive, Building One
　　　　　　　　　　　　　　　　　　　　　　Lexington, Kentucky 40503
　　　　　　　　　　　　　　　　　　　　　　Telephone: (859) 276-6262
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (859) 276-4500
　　　　　　　　　　　　　　　　　　　　　　Emails: john@ransdellroach.com
　　　　　　　　　　　　　　　　　　　　　　keith@ransdellroach.com
　　　　　　　　　　　　　　　　　　　　　　chad@ransdellroach.com

　　　　　　　　　　　　　　　　　　　　　　*Local Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　*Norfolk County Retirement System*

- 20 -

        Christopher J. Keller (*pro hac vice pending*)
        Eric J. Belfi (*pro hac vice pending*)
        Michael W. Stocker (*pro hac vice pending*)
        Rachel A. Avan (*pro hac vice pending*)
        **LABATON SUCHAROW LLP**
        140 Broadway
        New York, New York  10005
        Telephone: (212) 907-0700
        Facsimile: (212) 818-0477
        Emails: ckeller@labaton.com
        ebelfi@labaton.com
        mstocker@labaton.com
        ravan@labaton.com

*Attorneys for Plaintiff*
*Norfolk County Retirement System*