**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR-PEDIC INTERNATIONAL INC., MARK A. SARVARY, and DALE E. WILLIAMS,<br><br>Defendants. | No. 5:12-cv-00195-KKC<br><br>Hon. Karen K. Caldwell<br><br>**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD AND LIAISON COUNSEL** |
| ARTHUR BENNING, JR., Individually and on Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR-PEDIC INTERNATIONAL INC., MARK A. SARVARY, and DALE E. WILLIAMS,<br><br>Defendants. | No. 5:12-cv-00197-KKC<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................................1

II. FACTUAL BACKGROUND .......................................................................................................2

III. ARGUMENT.................................................................................................................................3

    A. The Actions Should Be Consolidated for All Purposes............................................3

    B. The City of Detroit Should Be Appointed as Lead Plaintiff....................................4

        1. The City of Detroit's Motion Is Timely........................................................5

        2. The City of Detroit Believes that It Possesses the Largest Financial Stake in the Relief Sought by the Class........................................................5

        3. Congress Expressly Envisioned that Institutional Investors Like the City of Detroit Would Be Appointed as Lead Plaintiff in Securities Fraud Class Actions ................................................................................6

        4. The City of Detroit Is Otherwise Qualified Under Rule 23.........................7

    C. The Court Should Approve the City of Detroit's Choice of Counsel......................9

IV. CONCLUSION............................................................................................................................10

1

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Ansfield v. Omnicare, Inc.*,
    Case No. 11-173-DLB-CJS, *slip op.* (E.D. Ky. Mar. 12, 2012) ..................................................6

*Bowers v. Windstream Kentucky East, LLC*,
    No. 3:09-cv-00440, 2012 WL 2862609 (W.D. Ky. July 11, 2012) ..........................................8

*Cornwell v. Credit Suisse Group, et al.*,
    No. 08-03758 (S.D.N.Y.) ........................................................................................................9

*Garden City Employees' Retirement Sys. v. Psychiatric Solutions, Inc.*,
    No. 3:09–cv–00882, 2010 WL 1790763 (M.D. Tenn. April 30, 2010) ....................................6

*In re American Medical Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ..................................................................................................8

*In re Emulex Corp. Sec. Litig.*,
    No. 01-00219 (C.D. Cal.) ........................................................................................................9

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................7, 8

*In re Northwestern Corp. Sec. Litig.*,
    No. 03-04049 (D.S.D.) ............................................................................................................9

*In re Priceline.com Sec. Litig.*,
    No. 00-01844 (D. Conn.) ........................................................................................................9

*In re Sprint Sec. Litig.*,
    No. 00-230077 (Cir. Ct. Jackson County, Mo.) .......................................................................9

*In re Telxon Corp. Sec. Litig.*,
    67 F.Supp.2d 803 (N.D. Ohio 1999) ...............................................................................3, 4, 5

*Irvine v. Imclone Systems, Inc.*,
    No. 02-00109 (S.D.N.Y.) ........................................................................................................9

*Kuriakose v. Federal Home Loan Mortg. Co.*,
    No. 1:08–cv–7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) .........................................5

*New York University v. Ariel Fund Limited*,
    No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County,
    Feb. 22, 2010) .......................................................................................................................10

*Schnall v. Annuity and Life Re (Holdings) Ltd.*,
 No. 02-02133 (D. Conn.) ...................................................................................................9

*Teran v. Subaye, Inc.*,
 No. 11-cv-02614, 2011 WL 4357362 (S.D.N.Y. Sept 16, 2011) ..............................................6

*Thurber v. Mattel, Inc.*,
 No. 99-10368 (C.D. Cal.)....................................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 § § 78u-4 ........................................................................................................................1, 10
 § 78u-4(a)(1)-(3)(B)(ii) ..........................................................................................................4
 § 78u-4(a)(2)(A)..............................................................................................................6, 10
 § 78u-4(a)(3)(A)(i) .............................................................................................................4, 5
 § 78u-4(a)(3)(A)(i)(II) .............................................................................................................5
 § 78u-4(a)(3)(A)-(B) ...............................................................................................................4
 § 78u-4(a)(3)(B)..................................................................................................................4, 9
 § 78u-4(a)(3)(B)(i)..................................................................................................................5
 § 78u-4(a)(3)(B)(ii) .............................................................................................................1, 3
 § 78u-4(a)(3)(B)(iii)................................................................................................................1
 § 78u-4(a)(3)(B)(iii)(I)............................................................................................................5
 § 78u-4(a)(3)(B)(iii)(II)(aa) .....................................................................................................9
 § 78u-4(a)(3)(B)(v) .......................................................................................................2, 9, 10

Federal Rules of Civil Procedure
 Rule 23 .....................................................................................................................1, 5, 7, 9
 Rule 23(a) ............................................................................................................................7
 Rule 42(a) ...................................................................................................................1, 3, 10

**OTHER AUTHORITIES**

Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep.
 No. 104-369, at 34 (1995)....................................................................................................7

MANUAL FOR COMPLEX LITIGATION, FOURTH § 11.631 (2012) .......................................................3

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**

## I.     INTRODUCTION

Institutional investor and putative class member Police and Fire Retirement System of the City of Detroit ( the "City of Detroit") hereby moves the Court for an order: (a) consolidating the above-captioned putative class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (b) appointing the City of Detroit as Lead Plaintiff for the consolidated action pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 (the "PSLRA"); and (c) approving the City of Detroit's selection of Scott+Scott LLP ("Scott+Scott") as Lead Counsel pursuant to §21D(a)(3)(B)(v) of the Exchange Act and Gray & White ("Gray & White") as Liaison Counsel.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions.  15 U.S.C. §78u-4(a)(3)(B)(ii).  Thereafter, as soon as practicable, the Court is to appoint as lead plaintiff the movant with the largest financial interest in the consolidated actions that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii).

As demonstrated below, there is no question that the above-captioned actions should be consolidated because they are each brought on behalf of overlapping classes and involve substantially similar issues of law and fact.  *See* Fed. R. Civ. P. 42(a).  Moreover, the City of Detroit should be appointed to serve as the Lead Plaintiff for the consolidated action because: (a) its motion for appointment as Lead Plaintiff is timely filed; (b) it has the largest financial interest in this litigation; and (c) it will adequately represent the interests of the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the City of Detroit's selection of Scott+Scott to serve as Lead

1

Counsel and Gray & White to serve as Liaison Counsel for the putative class should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

Presently pending before this Court are the two above-captioned actions (the "Actions") brought on behalf of classes of purchasers of Tempur-Pedic International Inc. ("Tempur-Pedic" or the "Company") securities during the time period between January 25, 2012 and June 5, 2012, inclusive (the "Class Period").  The Actions each allege violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Securities and Exchange Commission Rule 10b-5, by Tempur-Pedic and Company officers Mark A. Sarvary and Dale E. Williams.  *See* Norfolk County Retirement System's complaint, No. 5:12-cv-00195, ECF No. 1 ("*Norfolk County* Compl."), ¶¶10, 18-20 ; and Arthur Benning, Jr.'s complaint, No. 5:12-cv-00197, ECF No. 1 ("*Benning* Compl."), ¶¶7, 13-15.[1]

Tempur-Pedic is headquartered in Lexington, Kentucky, and engages in the manufacturing, marketing and distribution of mattresses and pillows made from visco-elastic polyurethane foam.  *See Norfolk County* Compl., ¶27;  *Benning* Compl., ¶23.  The Company's products are sold under the TEMPUR and Tempur-Pedic brand names.  *Id.*

According to the complaints, Defendants caused the Company's public Class Period communications to fraudulently conceal the fact that Tempur-Pedic's sales and earnings per share ("EPS") forecasts for 2012 lacked any reasonable basis or, at the very least, were not likely to be achieved due to the Company's weakening competitive position.  *See Norfolk County* Compl., ¶46;  *Benning* Compl., ¶33.  More specifically, both complaints allege that Tempur-

---

[1]    The defendants named in the *Norfolk County* and *Benning* complaints are hereinafter referred to, collectively, as "Defendants."

2

Pedic's January 24, 2012 earnings release and January 30, 2012 annual report contained false and misleading statements regarding the Company's 2012 outlook. *See Norfolk County* Compl., ¶46; *Benning* Compl., ¶33.

On June 6, 2012, before the opening of the markets, Tempur-Pedic issued a press release that disclosed substantially reduced sales and EPS guidance for 2012. *See Norfolk County* Compl., ¶43; *Benning* Compl., ¶29. In reaction to this news, Tempur-Pedic share prices dropped over 48% in a single trading session. *See Norfolk County* Compl., ¶¶31-35; *Benning* Compl., ¶¶24-26.

### III. ARGUMENT

#### A. The Actions Should Be Consolidated for All Purposes

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [chapter] has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 806-08 (N.D. Ohio 1999) (consolidating 27 actions). Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on common evidence. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH §11.631 (2012).

Here, consolidation is appropriate because the *Norfolk County* and *Benning* complaints each relate to Tempur-Pedic securities and allege the same fraud with respect to the same, or substantially similar, conduct. *See Telxon*, 67 F.Supp.2d at 806 ("All of the shareholder actions against [defendants] share both factual and legal issues in common."). The documents to be

3

reviewed and the testimony to be taken that relate to Defendants' alleged scheme will be substantially identical as to both Actions. For this reason, the City of Detroit respectfully submits that consolidation is appropriate and in the interest of judicial efficiency and economy.

### B. The City of Detroit Should Be Appointed as Lead Plaintiff

The Exchange Act, as amended by the PSLRA, establishes the procedure governing the appointment of a lead plaintiff in private securities fraud class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1)-(3)(B)(ii). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as Lead Plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i).

Second, within 60 days after publication of the Early Notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Finally, the Exchange Act provides that within 90 days after publication of the Early Notice, the court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). Under this Exchange Act provision, the "most adequate plaintiff" is determined by a two-step process. *See Telxon*, 67 F.Supp.2d at 806-08. First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; and (2) "has the largest financial interest in the relief sought" that otherwise satisfies the typicality and adequacy requirements of

4

Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Second, so long as that presumption is not rebutted, the "most adequate plaintiff" is to be appointed the lead plaintiff. *Id.* at 808.

As demonstrated below, the City of Detroit meets these requirements and should be appointed to serve as Lead Plaintiff in the consolidated Actions.

### 1. The City of Detroit's Motion Is Timely

The PSLRA provides that a plaintiff who files an action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). On June 20, 2012, a notice of pendency of the action was published via *Globe Newswire*. *See* Declaration of Mark K. Gray in Support of Police and Fire Retirement System of the City of Detroit's Motion for Consolidation, Appointment as Lead Plaintiff and for Approval of Its Selection of Lead and Liaison Counsel ("Gray Decl."), Ex. A. Because notice was published on *Globe Newswire* on the same day that Norfolk County Retirement System's complaint was filed, notice was timely. *See*, *e.g.*, *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv–7281, 2008 WL 4974839, at *1 (S.D.N.Y. Nov. 24, 2008). Class members who file a complaint or move pursuant to §21D(a)(3)(B) of the Exchange Act within 60 days of publication of the Early Notice are eligible to be appointed as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, the City of Detroit's motion is filed within 60 days from the publication of notice and, as such, is timely. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

### 2. The City of Detroit Believes that It Possesses the Largest Financial Stake in the Relief Sought by the Class

While the PSLRA does not provide a method for determining the relative financial interests of lead plaintiff movants, courts in this district and Circuit have utilized a four factor

5

test, often referred to as the *Olsten-Lax* Test, in determining the movant with the "largest financial interest." *Ansfield v. Omnicare, Inc.*, Case No. 11-173-DLB-CJS, *slip op.*, at 4 (E.D. Ky. Mar. 12, 2012) (J. Smith) Gray Decl., Ex. B. Under this test, the four factors to be considered are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiff(s) during the class period; and (4) the approximate losses suffered by the plaintiff(s). *See Id.; see also Garden City Employees' Retirement Sys. v. Psychiatric Solutions, Inc.,* No. 3:09–cv–00882, 2010 WL 1790763, at *3 (M.D. Tenn. April 30, 2010) (citation omitted). In applying the *Olsten-Lax* Test, courts have emphasized the fourth factor, the movants' respective losses. *See Teran v. Subaye, Inc.,* No. 11-cv-02614, 2011 WL 4357362, at *2 (S.D.N.Y. Sept 16, 2011) (citing cases).

Here, the City of Detroit purchased 17,700 shares of Tempur-Pedic common stock during the Class Period, retaining 17,500 of those shares, and expending over $1.1 million. *See* Gray Decl., Ex. C. The City of Detroit incurred losses of $724,630 on its transactions in Tempur-Pedic stock acquired during the Class Period.[2] *Id.*

### 3. Congress Expressly Envisioned that Institutional Investors Like the City of Detroit Would Be Appointed as Lead Plaintiff in Securities Fraud Class Actions

Congress reasoned that increasing the role of institutional investors like the City of Detroit, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage

---

[2] The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation. The approximate losses, however, can be determined from the Certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and are based upon reference to information concerning the current market for the Company's shares.

6

complex securities litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 (1995) ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."). Indeed, courts have found that the appointment of institutional investors is consistent with the legislative intent of the PSLRA. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012).

Here, the City of Detroit, an institutional investor possessing a significant financial stake in this litigation, is precisely the type of lead plaintiff envisioned by Congress. The City of Detroit should, therefore, be appointed to serve as Lead Plaintiff in this litigation.

### 4. The City of Detroit Is Otherwise Qualified Under Rule 23

Pursuant to §21D(a)(3)(B) of the Exchange Act, a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff, and, at this stage, those findings need only be "preliminary." *See Gentiva*, 281 F.R.D. at 120.

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* at 121 (citations omitted); *see also In re American Medical Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996).  The City of Detroit satisfies the typicality requirement because, like all other class members, it purchased Tempur-Pedic securities at prices artificially inflated by the alleged materially false and misleading statements issued by Defendants and suffered damages as a result thereof.  Thus, the City of Detroit's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same conduct and course of events.

In order to satisfy the "adequacy" requirement, a prospective lead plaintiff must show that he, she, or it does not have any conflicts of interest with other class members and that the proposed lead plaintiff's counsel are "'qualified, experienced and generally able to conduct the litigation.'"  *Bowers v. Windstream Kentucky East, LLC*, No. 3:09-cv-00440, 2012 WL 2862609, at *8 (W.D. Ky. July 11, 2012) (citation omitted.).

The City of Detroit is "adequate" because its interests are aligned with the interests of the Class.  Having suffered losses from the same artificial inflation in the price of Tempur-Pedic securities, it would benefit from the same relief.  The City of Detroit has also affirmed its willingness to assume the responsibilities as class representative in its sworn Certification filed herewith.  Gray Decl., Ex. D.  Additionally there is no evidence of antagonism between the City of Detroit and the putative Class.  Finally, as shown below, the City of Detroit's proposed Lead Counsel for the class, Scott+Scott, is highly qualified, experienced and able to conduct this

8

complex litigation in a professional manner. The City of Detroit has, therefore, made a *prima facie* showing that it satisfies all of the requirements of Rule 23 for the purposes of its Motion.

In sum, the City of Detroit, having the largest financial interest and satisfying the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as Lead Plaintiff, should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### C. The Court Should Approve the City of Detroit's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Here, the City of Detroit has selected the law firm of Scott+Scott and Gray & White to represent the class. Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Gray Decl., Ex. E. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions, recovering hundreds of millions of dollars for lead plaintiffs and others harmed by corporate fraud and mismanagement.[3] The skill and

---

[3] Some recoveries of note for Scott+Scott include: settlement of $80 million for a class of purchasers of Credit Suisse stock in *Cornwell v. Credit Suisse Group, et al.*, No. 08-03758 (S.D.N.Y.); settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.); and a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million).

professionalism of Scott+Scott's attorneys has not gone unnoticed by the courts. For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of . . . approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently found that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . . For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010), Gray Decl., Ex. F. Gray & White likewise possess a high degree of skill and professionalism, as well as an intimate familiarity with this court and its procedures. *See* Gray Decl., Ex. G. Its appointment as Liaison Counsel would, therefore, greatly benefit the putative class.

Accordingly, the Court should approve the City of Detroit's selection of Scott+Scott as Lead Counsel and Gray & White as Liaison Counsel.

### IV. CONCLUSION

For all the foregoing reasons, the City of Detroit respectfully requests that the Court consolidate the above-captioned putative class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, appoint the City of Detroit as Lead Plaintiff in the consolidated Actions pursuant to §21D of the Exchange Act, as amended by the PSLRA, 15 U.S.C. §78u-4, and approve its selection of the law firm of Scott+Scott to serve as Lead Counsel for the class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v) and Gray & White to serve as Liaison Counsel for the class.

DATED: August 20, 2012                    Respectfully submitted,
                                                            GRAY & WHITE

                                                            /s/ Mark K. Gray
                                                            MARK K. GRAY
                                                            DORIS A. KIM
                                                            713 East Market Street, Suite 200
                                                            Louisville, KY 40202
                                                            Telephone: (502) 805-1800
                                                            Facsimile: (502) 618-4059
                                                            mgray@grayandwhitelaw.com
                                                            dkim@grayandwhitelaw.com

                                                            SCOTT+SCOTT LLP
                                                            JOSEPH P. GUGLIELMO
                                                            DONALD A. BROGGI
                                                            500 5th Avenue, 40th Floor
                                                            New York, NY 10110
                                                            Telephone:  (212) 223-6444
                                                            Facsimile:  (212) 223-6334
                                                            jguglielmo@scott-scott.com
                                                            dbroggi@scott-scott.com

                                                            DAVID R. SCOTT
                                                            P.O. Box 192
                                                            156 South Main Street
                                                            Colchester, CT  06415
                                                            Telephone:  860-537-3818
                                                            Facsimile:  860-537-4432
                                                            drscott@scott-scott.com

                                                                   – and –

                                                           HAL CUNNINGHAM
                                                           707 Broadway, Suite 1000
                                                           San Diego, California 92101
                                                           Telephone: (619) 233-4565
                                                           Facsimile: (619) 233-0508
                                                           hcunningham@scott-scott.com

                                                           *Counsel for Proposed Lead Plaintiff Police and Fire Retirement System of the City of Detroit*

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of August, 2012 at Louisville, Kentucky.

<u>/s/ Mark K. Gray</u>
MARK K. GRAY
GRAY & WHITE
713 East Market Street, Suite 200
Louisville, KY 40202
Telephone: (502) 805-1800
Facsimile: (502) 618-4059
mgray@grayandwhitelaw.com
